### 212. SHARPTON v. THE STATE.

1. While some latitude should be allowed to trial judges in stating reasons for their rulings on questions of evidence, it is never proper for them to make any statement in the hearing of the jury indicating judicial disparagement of the testimony on one side, or judicial approval of the testimony on the other side.

2. In the exercise of the right to ask questions of witnesses for the purpose of bringing out the whole truth of the case, the presiding judge should not intimate any opinion upon the facts, or use any expression that might prejudice the rights of either party. He should at all times keep safely within the positive limitations of the law as prescribed by §4334 of the Civil Code.

Indictment for assault with intent to murder, from Richmond superior court—Judge Hammond. January 5, 1907.

Argued February 25,—Decided April 4, 1907.

*B. B. McCowen, Pierce Brothers, C. H. & R. S. Cohen,* for plaintiff in error. *Joseph S. Reynolds, solicitor-general,* by *John M. Graham, Austin Branch,* contra.

HILL, C. J. The plaintiff in error was indicted in Richmond superior court for the crime of assault with intent to murder. On his trial, the solicitor-general abandoned the charge of assault with

intent to murder, and asked for a conviction for the offense of shooting at another. The court withdrew from the consideration of the jury the higher felony, and submitted the lower grade of the offense. The jury convicted the defendant of shooting at another, whereupon he filed a motion for a new trial, which was refused, and a writ of error brought to this court. Numerous errors of law are assigned; but after a careful consideration of each one of them, we are clearly of the opinion that only two are meritorious. We do not deem it necessary to pass upon those which we consider are without merit, as none of them are novel, or involve any question of general interest. For a clear understanding of the two errors of law which we think imperatively demand a new trial, the issues made by the evidence should be stated.

The testimony for the State presents substantially the following case: On the day named in the indictment, the prosecutor, Walter McDonald, a boy fourteen years of age, with a companion thirteen years of age, went to the watermelon patch of the defendant for the purpose of taking a melon to eat. It was in the afternoon, between sundown and dark. While they were in the patch, and before they had taken any melon, without being hailed or ordered off, the defendant shot Walter McDonald in the face with a shotgun, putting out both of his eyes. Both boys positively identified the defendant. The same afternoon, a few hours before the shooting, the defendant had expressed his suspicion that Walter McDonald was taking his melons, and that he intended to give him "a dose of shot." There was also evidence that one barrel of the defendant's shotgun indicated that it had been recently shot, and that tracks similar to his were made in the melon patch near the place where the boy was shot. If these facts were true, a verdict would have been authorized for the higher felony. The threat to shoot, the preparation to carry out the threat, the speedy execution of the threat, the deliberate firing at the face of the boy twenty-five or thirty feet distant, without warning and without ordering him off the premises, indicate a crime deliberately planned and cruelly executed. The defendant contended that he was not guilty. He said that he did not do the shooting; that he had no knowledge thereof until the day following, when he heard of it first from some friend who had read an account of the shooting in the newspaper. He denied that he made the threat to shoot. He set up an alibi, and proved it by the

testimony of several members of his family. He showed, by the testimony of neighbors and friends, that the tracks in the water-melon patch near the place of the shooting were not made by him; that cobwebs were in the muzzle of both barrels and around the locks and hammers of his gun, and that rust was in the barrels; and it was contended that these facts and circumstances, with his proof of an alibi, and the darkness of the night at the time of the shooting, with evidence introduced by him that he had not made the threat which was sworn to by one of the witnesses for the State, prove that he was innocent of the crime.

The foregoing statement substantially sets forth the contentions of the State and the defendant, and it is seen how vitally important it was that the evidence submitted in behalf of the defendant should go to the jury handicapped by no expression or intimation on the part of the court that would impair its full force and effect, or prevent a free and impartial consideration thereof. The charge of the court, in submitting these contentions to the jury, can not be justly criticized in any respect. It was clear, comprehensive, accurate, and impartial. Throughout the entire trial, the scales of justice were held with even and steady hand, except in the two instances to which we will now call particular attention.

1. The identity of the person committing the crime was the vital question in the case. In addition to the facts and circumstances shown by the defendant as above narrated, which had been admitted as evidence for the jury to consider, he offered to prove, by several witnesses, that certain shells which he produced to them contained shot of a size different from those taken from the wounded boy. These witnesses had been called in by the defendant, and had been actively assisted by him in their investigation into all the facts and circumstances of the case. The testimony relating to the shells was objected to on the ground that they had been furnished by the defendant to the witnesses, and that this was an act of his in his own favor, subsequent to the commission of the offense, and, therefore, the testimony was not admissible. The court in ruling out the evidence, made use of the following language: "Their investigations were certainly not made adversely to the defendant's interest, and it was not the investigation that an officer of the law, looking for proof of guilt, would make. They were made at his instance and in his presence. He had a right to exclude them

from his premises; he had a right to keep them from searching in his house. As I understand it, he was aiding all these neighbors." The errors complained of in the foregoing ruling were pointed out as follows: (1) Because the ruling was tantamount to an expression of an opinion, in that it gave a greater weight to the testimony of the officers of the law than to that of defendant's witnesses. (2) Because the testimony of defendant's witnesses was discredited on account of the presence of defendant during the investigation made by the neighbors. (3) Because the court expressed an opinion in stating that their investigation was certainly not made adversely to the defendant's interest. (4) Because the ruling, in effect, made every act of the witnesses, throughout their entire investigation, the act of the defendant. (5) Because the effect of the ruling was to preclude the jury from considering all the testimony offered in behalf of the defendant, in the same unhampered manner as that introduced by the State. (6) Because it was an intimation of an opinion by the court that the defendant had attempted to manufacture his defense.

After a most careful consideration of these objections, we are constrained to hold that the remarks of the learned court in announcing his ruling, are justly subject to the criticisms made. To see the full force of the objections, it must be remembered that the circumstances of the tracks and the condition of the gun, which the defendant insisted indicated that he was not guilty, had been testified to by these neighbors; and these facts had been controverted by the State, by the testimony of a policeman who made an examination of the gun and the tracks, in connection with a deputy sheriff. Both sides of the contention had been placed before the jury. In excluding the testimony of the shells, on the ground that the defendant could not introduce in evidence any statement or act of his subsequent to the alleged offense, it was certainly a very serious disparagement of the testimony of the defendant's neighbors, who were his witnesses, to characterize their investigations as having been made in his interest, at his instance, and in his presence and with his assistance, and to go still further and state that such investigations were not those that an officer of the law would make, looking for proof of guilt. While this comparison might have been the truth as an abstract proposition, in the pertinent and concrete manner in which it was put by the court it must have

been very damaging to the defendant. It was a clear and emphatic discredit of much of the important evidence in behalf of the defendant, and a strong implied approbation of the testimony of the State in reference to the same facts. It lowered the testimony in behalf of the defendant to the level of self-interest, and it exalted the testimony in behalf of the State to the height of impartial justice.

We are aware that some latitude should be allowed the trial court in ruling upon the admissibility of testimony. And the Supreme Court in many cases has gone very far in ruling that it is not necessarily a cause for a new trial when the judge, in passing upon questions of law touching the admissibility of testimony, expresses an opinion as to what the evidence tends to show, and the weight to which it is entitled. See *Wyley* v. *Stanford,* 22 *Ga.* 397; *Scarborough* v. *State,* 46 *Ga.* 32; *Croom* v. *State,* 90 *Ga.* 430; *Oliveros* v. *State,* 120 *Ga.* 237. But a close examination of these cases will show that the court has never gone to the extent of permitting the trial judge, in giving his reasons for his ruling, to disparage the testimony of one side and to accredit the testimony of the other side, or to violate the spirit of the law as contained in section 4334 of the Civil Code. As said by the Supreme Court in the case of *Florida Central & P. R. Co.* v. *Lucas,* 110 *Ga.* 121, "While a judge, in discussing with counsel the admissibility of testimony, may, for the purpose of testing the accuracy of their positions and giving the reasons for his rulings thereon, refer to the evidence or the statements of witnesses without necessarily violating section 4334 of the Civil Code, it is not proper to go outside of the line of legitimate discussion upon the point presented and allude to the testimony of a particular witness in such a manner as apparently to give to it judicial endorsement and approval." And see *Alexander* v. *State,* 114 *Ga.* 266. Applying this rule to the remarks of the trial judge now under consideration, it seems clear to our minds that he not only gave an apparent, but an express judicial endorsement and approval to the testimony of the officers of the law which had been introduced by the State; and, to make his error more hurtful, he at the same time, by comparison, expressly disparaged and discredited the testimony of the defendant's witnesses. This made a very clear and harmful violation of section 4334 of the Civil Code, and it was destructive of that

fundamental principle of our law which declares that the credibility of witnesses, and the weight to be given to their testimony, are exclusively for the jury, who should be untrammelled by any expression of opinion of the court on the subject. As said by Mr. Chief Justice Jackson, "Under our Georgia law and practice, testimony, when admitted to go before the jury, becomes their legal property, and it is for them to consider it in every light, to weigh it for themselves, and bring in their own verdict upon the weight they may give it." *City of Atlanta* v. *Champe,* 66 *Ga.* 662. See, also, *Merritt* v. *State,* 107 *Ga.* 676. For the reasons stated, we think the trial judge, in using the language above set out, committed an error.

2. It is claimed that the court erred in propounding, in the presence of the jury, the following question to William Brown, a witness for the defendant, while giving his testimony: "And you say daylight hadn't all gone out of the sky at that time?" Two objections are made to this question: (1) Because the court in asking this question assumed a fact the witness had not testified to. (2) That the court so framed his question as to intimate an opinion of his own upon the proved facts. An inspection of the entire examination by the court of this witness convinces us that the court erred in propounding this question. One of the most important facts in controversy was, the exact time at which the shooting of the boy had occurred. It was contended by the State that it was about dusk, between sundown and dark. Much evidence was introduced by the defendant to show that the time of the shooting was after nine o'clock, on a dark, rainy night. This testimony was for the purpose of showing that the positive identification of the defendant by the injured boy and his companion was incorrect. The witness, Brown, whom the court examined, did not definitely fix the time of the night when he heard the shot. He stated that he thought it was between eight and nine o'clock; and this important question was thus left in doubt, when the judge, by his graphic and rather picturesque question, interpreted the language of the witness. The witness had said nothing about daylight still being in the sky at the time of the shot. The judge, however, by his question assumed that he had said so: "And you say daylight hadn't all gone out of the sky at that time?" meaning at the time when the witness heard the shot. The judge appeared to

press the question of time on the witness. In the beginning of his examination he had asked him the same question, substantially in the same words, "At the time you heard the gun shoot, had all the light from the sun gone out of the sky?" And although the witness did not so say in answer to this first question, the judge concluded his examination (all directed to the one point of fixing a definite time when the witness heard the shot) with the affirmative declaration: "And you say daylight hadn't all gone out of the sky?"

We can but think that this examination by the judge of the witness made the impression on the jury that the time when the shot was fired was as contended for by the State. It is impossible to lay down any inflexible rule by which the violation of section 4334 of the Civil Code can be determined. The facts in each case, and what may be called the general complexion of the case, must be considered, in arriving at a proper conclusion. But where an examination of a witness by the trial judge, couched in vividly descriptive language, stresses the contention claimed by one party of a vital point in the controversy, we think it wholly improbable that the jury did not make the reasonable inference that the court entertained an opinion on the subject in harmony with the trend of his questions. Beginning with the case of *Kelly* v. *State*, 19 *Ga.* 425, the Supreme Court has frequently ruled that "it is not only the privilege, but the duty of the court, to propound such questions to reluctant witnesses as will strip them of the subterfuges to which they resort to evade telling the truth." This fervid language has been repeated in totidem verbis in several subsequent decisions. Without meaning to criticize either the language or the ruling of the court, we do not give our adherence unreservedly to the statement. We think the court should, when some merely formal question has been omitted which might vitiate the entire trial, ask such questions as would be appropriate to such an exigency. But we think the "stripping" process should be left to counsel engaged in the case, and could not possibly be indulged in by the court without a violation of the spirit of section 4334 of the Civil Code. It is almost an intellectual impossibility for a judge to engage in an examination of a witness on vital questions of the case on trial, without in some manner, and to some extent, indicating his own opinion. Every practitioner knows how eagerly alert jurors are

to every utterance from the bench, and how sensitive is the mind of the juror to the slightest judicial expression. Therefore, while the trial judge has the right to ask questions of the witnesses whenever necessary to bring out the full truth of the case, we are not prepared to say that it is his duty to do so; and, in exercising the' right, he should be careful not to intimate any opinion upon the facts, or use any expression calculated to prejudice the rights of either party. *Bowden* v. *Achor,* 95 *Ga.* 243 (4). In this case, we are of the opinion that the learned and able trial judge unintentionally impressed the jury with the conviction that the court thought "the light had not entirely died out of the sky" 'when the unfortunate boy was shot, and, therefore, that the identification of the defendant was shown.                    *Judgment reversed.*