## GRAHAM v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 30, 1926.)

No. 2468.

**1. Criminal law ☞762(2)—Comments on evidence by judge should be judicial, and not partisan.**

While a federal judge may properly sum up the evidence, and may express his opinion as to its effect, it should be done in such manner that every one shall recognize that what is said from the bench is the cool and well-balanced utterance of an impartial judge, and has in it naught of the heat and partisanship of the advocate.

**2. Criminal law ☞1152(1).**

An appellate court must determine whether comments on evidence by trial judge tended substantially to deny defendant fair trial.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Criminal prosecution by the United States against Elijah J. Graham, Jr. Judgment of conviction, and defendant brings error. Reversed.

Clayton E. Kimbrough, Sr., and T. G. Nutter, both of Charleston, W. Va., for plaintiff in error.

B. J. Pettigrew, Asst. U. S. Atty., of Charleston, W. Va. (Elliott Northcott, U. S. Atty., of Huntington, W. Va., on the brief), for the United States.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. The plaintiff in error was the defendant below, and will be so styled here. He is a member of the bar of the District Court, and was one of the attorneys for a certain Dr. Davis, who was arrested on the charge of having violated the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). At the hearing of Davis before the commissioner, the principal witness for the prosecution was one Silverman. Subsequently, but prior to Davis being put upon his trial in the District Court, there were one or more interviews between the defendant and Silverman. At one of them, there was written out on a typewriter an affidavit which purported to be that of Silverman, and which, according to its tenor, he was to sign and swear to. The statements in it were in large part contradictory of the testimony given by Silverman against Davis. Silverman did not in fact sign this affidavit, nor did he swear to it.

Thus far there is no dispute as to the facts. The conflict is as to whether the interviews in question were brought about by the defendant, or by Silverman, as to whether the statements embodied in the draft affidavit were volunteered by Silverman, or were the suggestions of the defendant, who vainly sought to have Silverman sign and swear to them, and as to whether the defendant offered Silverman money to do so. Silverman testified that the defendant induced him to come to his (the defendant's) office, gave him the draft of the affidavit, and offered him $175 to swear to it. The defendant says that Silverman sought the interview, made the

statements, which the defendant then had taken down on the typewriter, and said they were true; but, when asked to sign and swear to the paper, he requested time for reflection. The defendant denies that there was any suggestion that he should pay Silverman anything. Silverman gave to the government officials his version of what had happened.

Subsequently Davis was indicted, pleaded guilty, and was duly sentenced. The defendant and another attorney appeared for him in court. Then the attorney for the United States filed an information against the defendant, charging him in much detail with violating section 135 of the Penal Code (Comp. St. § 10305), by corruptly offering Silverman $175 to change the evidence he had given against Davis before the commissioner.

At defendant's trial, Silverman's testimony, if believed by the jury, amply justified the verdict of guilty, which was in fact returned. On the other hand, the defendant took the stand and told a story which, if accepted, required his acquittal. He also produced a number of other witnesses, some of whom flatly contradicted material portions of Silverman's testimony, and others of whom gave evidence which it was difficult to reconcile with what he had said. The sharp issues of fact thus raised were for the determination of the jury, and its conclusion upon them cannot be questioned in an appellate court.

In the charge of the learned court below there was no error of statement as to the law. Under such circumstances an affirmance of the judgment would necessarily follow, were it not that what the learned judge did say to the jury in his comment upon the facts and upon the witnesses was such as constrains us reluctantly to the conclusion that the defendant was denied a fair trial. The judge did not, it is true, in so many words tell the jury that he thought the defendant was guilty. That, if he had deemed it best, he might properly have done, provided, of course, he had made it clear that on such a question the responsibility was that of the jury, and that they were not under the slightest obligation to agree with him.

[1] Moreover, it is always the right of the federal judge to review and marshal the testimony, and it is often his duty, for in no other way can he more effectively promote the doing of justice. In any particular case, it may be that the evidence is such that to sum it up fairly and intelligently is to come close to a demonstration of the guilt of the accused. That is no reason why the summing up should be omitted, or the conclusion to which it points evaded or obscured. In the dis-

charge of this high function, it is, however, of the first importance, both to the particular defendant who may be on trial and to the administration of justice generally, that every one shall recognize that what is said from the bench is the cool and well-balanced utterance of an impartial judge, and has in it naught of the heat and partisanship of the advocate. [2] In this, as in all other matters, no reasonable man expects that the ideal will be obtained, always or perhaps frequently. To reverse judgments, even in criminal cases, merely because it has not been, will in the long run do more harm than good. In any particular case, the most an appellate court may do is to consider with care the charge as a whole in its bearing upon the issues upon which reasonable men in the jury box might differ. It must then take up the particular passages which, upon cool reflection, one would rather have expressed differently, and, having done so, must make up its mind whether they can fairly be thought to have tended to a substantial degree to deny the accused a fair trial.

The charge as a whole is too long for reproduction, and to quote from it particular passages which have been criticized would be more likely to obscure than to illumine the principle upon which our decision is based. We are not concerned whether, under other circumstances and in different relations of the testimony to the issues upon which the jury was called to pass, there would have been error in using any of them. All that we hold is that, as this case stood, it seems to us that they were calculated to deny a fair trial to the defendant.

Reversed.