Patricia Louise **MOODY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 23588.

United States Court of Appeals
Fifth Circuit.

May 10, 1967.

John J. Sullivan, Savannah, Ga., for appellant.

Donald H. Fraser, U. S. Atty., Savannah, Ga., for appellee.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant, Patricia L. Moody, and one co-defendant, her husband, were convicted of a violation of the Dyer Act, 18 U.S.C. § 2312, to-wit, that they transported a stolen 1959 Ford automobile from Chatham County, Georgia, to Jackson County, Mississippi, knowing the same to have been stolen.[1] The third co-defendant, James Marshall Johnson, was granted a Motion for Judgment of Acquittal at the conclusion of the evidence.

The car, with the owner's title papers and golf clubs in it, was stolen in Savannah, Georgia, either February 1st or 2nd, 1963. Prior thereto, on January 31st, appellant applied for license tags and registered a similar car, using a spurious bill of sale which stated that the car had been bought on that same day from one Richard Jones of Alma, Georgia.[2] The testimony concerning acquisition of the vehicle was, to say the least, conflicting. J. H. Applegate, the F.B.I. agent who first investigated the suspected Dyer Act violation, testified that appellant gave him the fictitious bill of sale and told him that her husband had obtained the car in Savannah some time early in 1963 and that she did not know where he obtained it, although it was registered in her name. Later, according to the testimony of another F.B.I. agent, appellant said that while separated from her husband, she had contacted an individual advertising a 1959 Ford, knowing that her husband was interested in the car, and that she referred this person to her husband who purchased the automobile. Appellant's husband gave a statement in which he pled guilty to transporting a stolen vehicle, and alleged that his wife helped him prepare the fictitious bill of sale two days prior to the actual theft, that she suggested that he remove the serial plate from a wrecked 1959 Ford to use on the car which they would later steal, and that she accompanied him while they drove around looking for a 1959 Ford to match the description on the bill of sale. At trial, however, he controverted his prior statement and said that appellant had no knowledge that the car was stolen and that he had told her he was buying the car.[3]

In any case, shortly after the theft of the automobile, appellant, her husband, and James Marshall Johnson, who was acquitted, made a trip in the car from Savannah, Georgia, to Pascagoula, Mississippi, going to the home of relatives there, and later returning to Savannah. The automobile was abandoned in Brooket, Georgia, and was recovered by

---

1. § 2312. Transportation of stolen vehicles.
   Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 806.

2. At trial, appellant's husband admitted that the bill of sale was fictitious and that there was no such person as "Richard Jones."

3. A. Well, I filled out the bill of sale without her knowledge whatsoever of it, and took it to the house, where we were living, Tattanall Street, and told her that I was buying the car, that they were doing some work on it, and we could go on down and get the tags for it and pick it up in a day or two.

Q. Now, you are telling this court that she didn't know that you filled all of this out?
A. No, sir, she didn't.
Q. And there is no Richard Jones, is there?
A. No, sir, there is not.
Q. Why did you tell the FBI there was a Richard Jones and lived over at Alma, R.F.D., that you had bought it from?
A. That, sir, was another lie.
Q. Another lie?
A. Yes, sir, it was.
Q. Can you tell us at what point we can start believing you?
A. That is left up to the judgment of the court, sir. I can't tell you.
Q. You can't really tell when the truth would begin to come out, can you?
A. Yes, sir, I can.
Q. You can?
A. I know when I am stating the truth and when I am stating a lie.

the sheriff of Bulloch County, Georgia, in connection with a bank robbery. The Dyer Act investigation followed. After the car was impounded, appellant tried to have it released to her but was unsuccessful and settled for removing her personal belongings.

At trial, appellant's motion for acquittal was denied, whereupon the case was submitted to the jury, who returned a verdict of guilty. Appellant filed a timely motion for new trial, which was denied, and this appeal is taken therefrom.

For a reversal of her conviction, appellant relies on four points of error: (1) that the evidence is insufficient to sustain her conviction; (2) that the court, in its charge to the jury, made prejudicial comments bearing on appellant's guilt; (3) that the court erroneously admitted the fictitious bill of sale into evidence; and (4) that a golf club bearing the automobile owner's name and found in the car was wrongly admitted.

I. *Insufficiency of the evidence.*

■■ "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 1941, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704, * * *. In reviewing the case, moreover, this Court must assume that the jury resolved conflicting evidence in such a way as to sustain the verdict and must accord the government the benefit of all reasonable inferences which may be drawn from the proven facts. Harding v. United States, 8 Cir. 1964, 337 F.2d 254; Rua v. United States, 5 Cir. 1963, 321 F.2d 140; Riggs v. United States, 5 Cir. 1960, 280 F.2d 949.

In this case, the government had the burden of proving (1) that the car was stolen, (2) that appellant transported it in interstate commerce, and (3) that she had the requisite knowledge. The evidence, we believe, amply supports the guilty verdict.

■■ The undisputed evidence shows that the car was stolen in Savannah, Georgia, and that appellant rode in it from Savannah to Pascagoula, Mississippi, and back again to Savannah. As to appellant's knowledge that the car was stolen, the jury would have been justified in finding her a party to the whole scheme. She admitted registering the car with a fictitious bill of sale, which her husband, in his earlier statement, alleged she helped to prepare. Moreover, her conflicting stories concerning her husband's manner of obtaining the vehicle and her husband's earlier statement that she had suggested he switch serial plates and that she was with him when he stole the car are substantial facts from which the jury could reasonably conclude that she knew the car was stolen. This Court has said, in a Dyer Act prosecution, that "[p]ossession itself [of the stolen vehicle], under proper circumstances, may be sufficient for the jury to draw the inference of guilty knowledge." Barfield v. United States, 5 Cir. 1956, 229 F.2d 936, 939. [Parenthesis added]. See also Pilgrim v. United States, 5 Cir. 1959, 266 F.2d 486, 488; Schwachter v. United States, 6 Cir. 1956, 237 F.2d 640, 643. Appellant does not quarrel with this rule, but she seems to contend that her explanation and protestations of innocence coupled with her husband's testimony at trial that she did not have the requisite knowledge had the effect of overriding the effects of possession. However, inconsistent statements made by her and her husband cast doubt upon their explanations and their credibility; and it is particularly within the province of the jury to believe or disbelieve her claims of innocence. There was substantial evidence from which the jury could and obviously did infer that she transported the vehicle with knowledge of its stolen character.

II. *Prejudicial comments.*

Appellant contends that the court below, in its charge, prejudicially influenced the jury on the issue of her guilt and erred in not granting a mistrial. The following language, which refers to the Mississippi relative whom appellant,

her husband, and Johnson visited in Pascagoula, forms the basis of appellant's contention.

*The Charge of the Court.*

"Now, Members of the Jury, there is one thing that struck me, and that was this old gentleman. *They* came to stay with him. He was not the kind of a person you would read about in the New York Times, or some of the New York papers, living in Mississippi. Here he comes all the way back over here and brings that stick. (golf club) He wasn't going to countenance anybody coming into his house with stolen goods. He came all the way back here from Mississippi to testify against his own kinsman, because he knew he was wrong. A man that does that is a real man. Now, *three of them* came up to his house there way down in the Delta in Mississippi, where they say all these unjust people live down there, I mean what the newspapers say about them in these present times. Now, *here is a man*—I would like to see some of them up there do that, *coming* all the way over here with a golf stick *to incriminate and help convict* and make a felon of his own kinsman. *I thought that was good.* I just looked at that old man and I said 'Well, old man, you are a good man to do that.' He just didn't countenance anything like that. He was law abiding and I think that was great on his part." [parenthesis and emphasis added]

A motion for mistrial followed, and the Court stated that he "didn't say the de-

fendants were guilty or innocent." [4] We agree with appellant, however, that these words were at most a mild antiseptic with no curative effect, and reverse because of the prejudicial comments.

■■ A judge is not an automaton. He sees, he hears, and he is not commanded to be silent or sterile in reaction. He must, however, exercise care lest he be overtly and overly reactive, thus communicating to the jury prejudicial partisanship. Federal court decisions recognize the power of the judge, within limits, to comment on the evidence and to express opinions. See Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Ray v. United States, 8 Cir. 1966, 367 F.2d 258; Woodring v. United States, 8 Cir. 1963, 311 F.2d 417, cert. denied 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414; Lott v. United States, 5 Cir. 1956, 230 F.2d 915; cert. denied 351 U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477; Texarkana Bus Co. v. Baker, 5 Cir. 1944, 142 F.2d 491; 9 Wigmore, Evidence § 2551 (3d ed. 1940). In Hellman v. United States, 5 Cir. 1964, 339 F.2d 36, 37, a tax case where appellant alleged, inter alia, that the trial court excessively questioned witnesses and conveyed an impression to the jury that he was prejudiced against the witness, this Court, speaking through Judge Gewin, said:

"While the trial judge in a criminal case must be abundantly careful to refrain from becoming an advocate for the Government or from indicating a dislike or disbelief of any witness, particularly the defendant, he also has

---

4. THE COURT: Well, I will overrule the motion because I didn't say the defendants were guilty or innocent. It just happens in this case, as I understood the district attorney, he is dismissing the case against the boy, who was a nephew of that old man, or kinsman, against whom he came all the way over here to testify.
MR. FRASER: James Moody was a nephew of Mr. Moody from Mississippi.
THE COURT: That's the boy in this case.
MR. FRASER: James Moody.

MR. SULLIVAN: Not this defendant, if your Honor please.
THE COURT: That's Johnson. That's right. But I didn't express any opinion as to his guilt or innocence. I was just paying that old man a compliment, which I felt he ought to have, coming all the way from Mississippi over here to testify in this particular case, even though it was his kinsman. I think that was grand in him to do it, but that is neither here nor there. I want to get through with my charge.

the prerogative—often the duty—to insure that the facts are accurately brought out."

This privilege, however, has been severely restricted, and the federal judge is under strict duty to direct the jury clearly that they are the sole judges of fact and are not bound by the judge's comments. Questions of fact must unmistakably be left to the jury. United States v. Ornstein, 6 Cir. 1966, 355 F.2d 222; United States v. Bloom, 2 Cir. 1956, 237 F.2d 158; United States v. Curzio, 3 Cir. 1948, 170 F.2d 354. The trial judge, in *Ornstein,* supra, used the word "proved" while discussing the necessary elements of mail fraud charged in an indictment and never sanitized his comments to the jury. The Court, in reversing the case, emphasized:

> "In a criminal trial, before a jury, the defendant holds a carefully guarded right to have his guilt or innocence adjudged by the jury. The trial judge must not usurp the functions of the jury, nor give the jury an impression of partisanship on either side." 355 F.2d 224.

Some comments, moreover, are so highly prejudicial, that even an admonition to the jury that they are not bound by the judge's opinion will not cure the error. Such a remark occurred in *Quercia,* supra, where the trial judge, in a criminal prosecution, commented in his charge that the defendant wiped his hands during his testimony and that "that is almost always an indication of lying." Justice Hughes succinctly stated the restrictions which form an integral part of the judge's right to comment:

> "This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. * * * His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This Court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided;' * * * *." Id. 289 U.S. at 470, 53 S.Ct. at 699, 77 L.Ed. at 1325.

Another example was the statement in United States v. Chibbaro, 3 Cir. 1966, 361 F.2d 365, a prosecution for bank robbery and for putting the lives of bank employees in jeopardy. One of the defendants, about two months after the robbery, allegedly said he had a small scar on his face. When he took the stand, however, he had no scar, and the trial judge quipped, "Scars can be mended." In holding the remark so prejudicial in itself as to require a new trial, the Court said that even a specific charge to the jury to disregard would have been insufficient.

That a jury is highly sensitive to every judicial utterance is axiomatic. Graham v. United States, 4 Cir. 1926, 12 F.2d 717; Sharpton v. State, 1907, 1 Ga.App. 542, 57 S.E. 929, 932. A judge's words to the jury carry an authority bordering on the irrefutable. In explaining the law he must present all of the relevant alternate routes which the jury may choose, and in doing so he may, and indeed sometimes he must, analyze and dissect the evidence to insure that the jury comprehends its options and their legal effects. But the judge must take care that the respect or awe which his office engenders does not tend to persuade or lure the jury to defer to his apparent experience and wisdom. In the present case the judge's comments were readily susceptible of the inference that the defendants were guilty, and the jury might have concluded that the credibility of witnesses was not its problem.

> "In any particular case, the most an appellate court may do is to consider with care the charge as a whole in its bearing upon the issues upon which

reasonable men in the jury box might differ. It must then take up the particular passages which, upon cool reflection, one would rather have expressed differently, and, having done so must make up its mind whether they can fairly be thought to have tended to a substantial degree to deny the accused a fair trial." Graham, supra, 12 F.2d at 718.

In the instant case, the Court referred to the "three of them" and congratulated the witness for helping to incriminate and convict and make a felon of his own kinsman (who was later acquitted). We note that the court below did not instruct the jury to disregard his own comments, and we are not free from doubt that this did not have a substantial influence on the jury.

■ A judge must strive for neutrality and absolute circumspection. It would be absurd to exact this standard on review of all cases; judicial peccadillo can be tolerated because its effect may be rendered harmless. But here the boundary of tolerance has been invaded and abused.

III. *Introduction of the fraudulent bill of sale.*

■ In view of the remand of this case, it is not inappropriate to comment on the remaining points of error alleged by appellant. She complains first that the fraudulent bill of sale was erroneously admitted into evidence, since the fictitious vendor, Richard Jones, had not been properly identified.[5] This objection is frivolous. The admittedly spurious bill of sale was given by appellant to an F.B.I. agent who questioned her about the car. It was introduced, not to prove appellant's title to the car, or to prove the genuineness of the document, but, rather to connect her with the stolen vehicle. As such, it was more closely akin to a piece of real evidence, which merely requires that personal connection with it be shown. See 7 Wigmore, Evidence § 2129 (3d ed. 1940). In any event no authentication of this "bill of sale" as a document is needed where neither its execution nor the truth of its statements is in issue. 7 Wigmore, Evidence § 2132 (3d ed. 1940).

Were the rule as appellant contends, the ramifications would be absurd, since spurious documents which utilize fictitious makers would be kept forever out of evidence.

IV. *Admission as evidence of the golf club.*

■ Finally, appellant alleges that the golf club bearing the name of Dina Meddin, the owner of the car, was irrelevant and inadmissible. This objection is of no merit. The clubs belonging to Mrs. Meddin were in the car at the time of its theft and were still there when appellant, her husband, and James Marshall Johnson drove it to Mississippi. The car had been repainted and a new serial plate was affixed to it. The golf club, then, served to identify the car as that belonging to Mrs. Meddin, and

---

5. MR. FRASER: I offer this bill of sale in evidence.
   THE COURT: Any objections?
   MR. SULLIVAN: If Your Honor please, I object to this automobile bill of sale. It is signed by Richard Jones. He hasn't been identified. There is nothing to show that either one of these defendants made this bill of sale.
   THE COURT: What do you say to that?
   MR. FRASER: The FBI Agent testified that Mrs. Moody gave him this alleged bill of sale to this described autobile. It shows the date of the purchase as January 31st, 1963, a couple of days before the car was actually stolen.

THE COURT: Well, I will admit it on that theory.
   MR. SULLIVAN: Well, I object to it, if Your Honor please, on the basis that it is of no probative value in that the person who supposedly made it has not been identified.
   THE COURT: What do you say about that?
   MR. FRASER: That has nothing to do with it, if the Court please. They asked this woman about this automobile and she handed a bill of sale to them saying that is where they got the automobile.
   THE COURT: I think you are right on that. I will admit it.

was admitted for that purpose.[6] Appellant's reliance on Brubaker v. United States, 6 Cir. 1950, 183 F.2d 894 is misplaced. In that case, the guns which were held erroneously admitted into evidence were those found inside defendant's suitcase and not shown to have any connection with the stolen car. The Court, therefore, properly ruled their admission prejudicial, since the guns belonging to the accused, or at least in his possession, had no bearing on the Dyer Act charge. Here, however, the clubs belonged to the owner of the car and served to identify the stolen vehicle as Mrs. Meddin's automobile.

Reversed and remanded.

Ainsworth, Circuit Judge, dissented.

---

6. MR. FRASER: I think Mr. Sullivan misses the point. The fact that the golf club was in the stolen automobile and was later recovered in that same automobile serves to identify that automobile as belonging to Mrs. Meddin.

THE COURT: Well, I am going to admit it.

MR. SULLIVAN: We have never contested that it was not her's. If we were saying that was not her car then it would [be] a link to link it with ownership. This is just for the purpose of inflaming and prejudicing the minds of this jury.

THE COURT: No. The recent possession in the hands of a party unexplained raises a presumption of guilt. This lady here was in this car that went out to Mississippi and it was later identified by the owner as being her car, and then this lady here gave a bill of sale to the officers and told him that was where she got the title to the property, and the date of that was prior to the date of the stealing of the automobile. Well, anyway, I will admit it.