UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Linden CLEMENT and Donald
Clem Lohman, Jr., Defendants-
Appellants.

No. 74–1436

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1974.

J. V. Eskenazi, Federal Public Defender, Theodore J. Sakowitz, Asst. Federal Public Defender, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Kerry J. Nahoom, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

WISDOM, Circuit Judge:

In this narcotics case the district judge explained to the jury that the term "rip-off", used by the defendants' attorney in referring to their attitude toward actions of codefendants, was limited—to the judge's knowledge—to use in a narcotics context. We take judicial notice of the fact that in ordinary speech the term "rip-off" is used to refer to any fraud, confidence game, or deceitful overreaching by one person of another or of others. In the circumstances of this case, the evidence of guilt was far from overwhelming. The error therefore was not harmless. The effect of the error was to deprive the defendants of a fair trial. We reverse and remand for a new trial.

Charles L. Clement and Donald C. Lohman were convicted on three counts of conspiracy to import cocaine, in violation of 21 U.S.C. § 952(a), and of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). They had turned over $7500

* Rule 18, 5 Cir.; Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

to one John Kennedy, a co-worker with Lohman on a railroad in Peoria, Illinois. Kennedy, Steven Creighton, Mary Ellen Teague and her daughter flew to Lima, Peru, via Jamaica. While in Lima, Kennedy and Creighton bought a quantity of cocaine for $5,000. Mrs. Teague carried it to Jamaica, strapped to her body. Later, Steven Kennedy, John Kennedy's brother, was the courier from Jamaica to Miami. At Miami agents arrested the two Kennedys, Creighton, and Mrs. Teague. Clement and Lohman were in Miami at the time. These facts are undisputed.

The two Kennedys, Creighton, and Teague pleaded guilty. Clement and Lohman, however, pleaded not guilty. They denied that they had ever intended to finance a drug purchase. Instead, they alleged that they advanced the money for the purchase of merchandise in Jamaica and Peru for importation and resale in the United States.

Lohman testified that Kennedy approached him, as he had the preceding August, with the idea of importing consumer goods from Jamaica and Peru for resale in Peoria at a substantial profit. He also testified that Kennedy represented that he had been to Peru previously and had imported goods from there on a small scale; that he knew an individual in Jamaica who could be of assistance in procuring products in that country. He displayed the business card of a Jamaican import firm. Kennedy discussed among other items, costume jewelry, llama rugs, leather coats, purses, pictures and rings. He displayed a leather coat that he said was acquired in Peru for a modest sum that sells in Peoria for five times its cost. On another occasion Kennedy took Lohman to the Omega Boutique in Peoria, and told Lohman that he had in the past sold merchandise to that shop. Ultimately, Lohman was convinced of the wisdom of

importing merchandise from Peru and Jamaica and assembled $7,500 to invest in the venture.[1] Lohman and Clement testified that as soon as they learned that the money had been used to buy cocaine, they told the others to return the cocaine for a refund of their money. Informed that the seller would not cooperate, they then, so they say, told their co-defendants to jettison the drugs.

Lohman's testimony was corroborated by Clement, John Kennedy, and Creighton. It was challenged, in part, by Mrs. Teague who, as a government witness, contended that Clement and Lohman furnished the $7,500 for the purchase of cocaine. She added, however, that immediately after the cocaine was acquired, and while it was yet in Jamaica, Lohman and Clement said that they did not want to have anything to do with it. Additionally, Mrs. Teague acknowledged that she met Lohman "[j]ust a couple of days" before departing on her trip to Peru, and met Clement "[p]robably about a week" prior to meeting Lohman.

Lohman was the last witness to testify. On direct examination, he attempted to explain why he and Clement, having allegedly dissociated themselves from the drug venture, had been in Miami at the time that the cocaine was introduced there. He was asked, "Did there come a time that you and Mr. Clement thought you were ripped off?" He answered affirmatively and, under further questioning, explained that he undertook the trip to Miami to confirm his suspicion that his money had never in fact been spent. The trial judge questioned him sharply about this explanation for the trip. In the course of this questioning, the trial judge interjected his opinion that to be "ripped off" is to advance money for the purchase of narcotics and receive nothing in return. He asserted that the usage of

1. Of this sum, Lohman borrowed $2,500 from a bank and $5,000 from his friend and co-worker, Clement, who himself borrowed $2,000 from a bank.

the term "rip off" was limited to narcotics contexts.[2]

The defense counsel took issue with these comments and, in the presence of the jury, offered to introduce evidence to show that "rip off" carries no such narrow connotation, that, on the contrary, it is simply the slang synonym for "defraud". The judge's response, was: "Well, I will take your statement as a statement of fact. I will also add that the only time I have ever used it in almost nine years on the bench has been in connection with narcotics transactions."

The trial judge was incorrect in so delimiting the meaning and connotation of the expression "rip off". Reporters may refer to an unsuccessful stunt for profit as a "rip-off" on the public that paid to see the stunt. A candidate for political office may refer to his opponent's voting record as a "rip-off" on the constituents. Americans who have had their ruby mine expropriated without any compensation may refer to their having been "ripped-off" by the expropriating government. A confidence game is a "rip-off". And, if indeed, Lohman and Clement were telling the truth, they were "ripped-off" when their money was used to buy drugs instead of legitimate merchandise.

■ The power of a federal judge to comment on the evidence is broad, but it must be exercised with care:

"In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses."

Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321.

■ We examine a trial judge's comments in context, in order to determine whether they appear to have prejudiced the defendants' trial. United States v. Cisneros, 5 Cir. 1974, 491 F.2d 1068. Here the remarks were made during the testimony of Lohman, the last witness to testify, while he was attempting to explain his relationship with John Kennedy and the reason for his presence in Miami. His explanation was manifestly critical to his defense. The comments of the trial judge, however, contradicted Lohman's explanation.

■ "A [trial] judge's words to the jury carry an authority bordering on the irrefutable." Moody v. United States, 5 Cir. 1967, 377 F.2d 175. We conclude that the defendants/appellants were so prejudiced as to have been denied their right to a fair trial.

Reversed and remanded.

2. BY THE COURT:
Q. What does the expression "ripped off" mean to you?
LOHMAN:
A. It means to me it's when somebody takes you, steals something from you or just takes it. That's the word for today, I guess, what you would call—
Q. That is what it means to you?
A. Yes, sir.

  *   *   *   *   *

BY THE COURT:
Q. Don't you know that the expression *"ripped off" is an expression that is confined almost exclusively to narcotics transactions?* (Emphasis supplied).

LOHMAN:
A. No, sir.
Q. It is an expression which is used when somebody makes a pretended sale of narcotics to get the buyer into a place where he can rob him?
A. No, sir. I did not know that.
Q. *That is what the expression means and that is the only thing that I know it means. It relates solely to a pretense of buying narcotics in order to get the buyer in with money and you don't have any narcotics.* You may have some, but your object is to rob him of his money and not give him anything. And that is the expression "ripped off." (Emphasis supplied).