**UNITED STATES of America**

v.

**Manoutchehr AADAL, Defendant.**

**No. 67 Cr. 592.**

United States District Court
S. D. New York.

Sept. 1, 1967.

See also D.C., 280 F.Supp. 859, and D.C., 280 F.Supp. 866.

Robert M. Morgenthau, U. S. Atty., by Asst. U. S. Atty. John H. Doyle, New York City, for the United States.

Zisholtz & Weissberg, by Gerald Zisholtz and Morris Weissberg, New York City, for defendant.

MOTLEY, District Judge.

### Memorandum Opinion
### Findings Of Fact
### Conclusions Of Law

Defendant was charged in a twelve count indictment with violating 49 U.S.C. § 121 [1] and 18 U.S.C. § 2.[2] The indictment charged that defendant Aadai and Monarch Trading Company, Inc. "unlawfully, wilfully and knowingly, and with intent to defraud, did issue and aid in the issuing and procuring the issue of, and did negotiate and transfer for value, bills of lading", described in each of the twelve counts, "purporting to represent goods received for shipment from Baltimore, Maryland to Karachi, Pakistan, which bills of lading, as the defendant then knew, did contain false statements as to the receipt of goods and other matters, to wit, false statements as to the weight, quantity and description of goods purportedly covered by the said bills of lading."

Defendant waived trial by jury.

Upon the eleven day trial, the evidence adduced by the government established the following material facts:

1. Defendant Aadal was the president of Monarch Trading Company, Inc. and president of American Asia Lines, Inc., both located in New York City. Monarch was a shipping company engaged in the export-import business. American Asia Lines was the agent for four affiliated steamship companies each of which owned one vessel, i. e., the SS. Eldorado, Yukon, Bonanza and Ponderosa. American Asia Lines also chartered a vessel known as the SS. Cathy.

2. In February of 1964, Monarch received orders for the shipment of steel sheets and billets from purchasers in Pakistan. Payment for these shipments was provided for by irrevocable letters of credit established by the purchasers through the National Bank of Pakistan

---

[1] Any person who, knowingly or with intent to defraud, falsely makes, alters, forges, counterfeits, prints or photographs any bill of lading purporting to represent goods received for shipment among the several States or with foreign nations, or with like intent utters or publishes as true and genuine any such falsely altered, forged, counterfeited, falsely printed or photographed bill of lading, knowing it to be falsely altered, forged, counterfeited, falsely printed or photographed, or aids in making, altering, forging, counterfeiting, printing or photographing the same, or issues or aids in issuing or procuring the issue of, or negotiates or transfers for value a bill which contains a false statement as to the receipt of the goods, or as to any other matter, or who, with intent to defraud, violates, or fails to comply with, or aids in any violation of, or failure to comply with any provision of this chapter, shall be guilty of a misdemeanor, and, upon conviction, shall be punished for each offense by imprisonment not exceeding five years, or by a fine not exceeding $5,000, or both.

[2] (a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.
(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such.

in favor of Monarch. These letters of credit were drawn on Manufacturers-Hanover Trust Company in the City of New York. In each instance, the letters of credit required as a condition of payment "On Board" bills of lading.

3. Twelve such "On Board" bills of lading were prepared and issued for nonexistent or short shipments between April 21, 1964 and May 29, 1964 by American Asia Lines. Monarch negotiated the false bills of lading issued by American Asia Lines in connection with the letters of credit.

4. This fraudulent negotiation resulted in Monarch receiving for itself or its assignee approximately $800,000 from Manufacturers-Hanover for which no steel was ever shipped to the purchasers in Pakistan. When the bills of lading were negotiated, there was either no steel placed on board the indicated vessel, which was one of those named above; or there was steel placed on board of considerably less weight than required by the particular purchase order. Some of the unshipped steel was subsequently shipped, but the resulting loss to the purchasers in Pakistan was $800,000.

5. More specifically, with respect to 7 bills of lading negotiated by Monarch no steel was ever shipped on board any of the ships operated by American Asia Lines. In the case of 4 of the bills of lading, steel was placed on board but was considerably less than the amount ordered. In one instance, the ordered steel was shipped 22 days later.

6. Defendant not only was the president of Monarch Trading Company, Inc., and American Asia Lines, Inc., but he controlled the operations of both companies; both companies occupied adjoining offices in the same building; and the employees in both companies worked under the direction of defendant as president.

7. The twelve false bills of lading were either prepared by defendant or under his direction and they were negotiated with the defendant's knowledge of their falsity and pursuant to his direction with the intent to defraud. Specifically, the evidence showed that defendant actually worked on the orders for the steel, consulted with an employee regarding the booking of freight on various vessels, prepared some of the bills of lading himself, directed the placing of the "On Board" stamp on others, and dictated to his secretary the information necessary for and the direction to negotiate the bills of lading.

8. Defendant confessed the crime to officers of American Asia Lines. An admission was also made to a lawyer who accompanied a representative of the purchasers in Pakistan to a meeting with defendant to discuss rectifying the failure to ship the steel ordered and the short shipments. It was following this meeting that some of the unshipped steel was subsequently shipped.

9. To prove negotiation, in all but four instances, the originals or certified copies of the original bills of lading were produced. As to the four instances in which the original or a certified copy of the original bill of lading was not produced, the invoices of Monarch Trading Company were offered and received in evidence. In addition, an employee from Manufacturers-Hanover who testified produced from the files of the bank a non-negotiable copy of each bill of lading which the bank retained upon negotiation. Matching non-negotiable copies of the bills of lading were also produced from the files of Monarch Trading Company.

10. Finally, the evidence showed that defendant knew, at the time each bill of lading was negotiated, that there was, in fact, no steel placed on board a particular ship or the shipment was short. Defendant's knowledge stemmed from the fact that he knew the position of the ships at sea from Position Sheets maintained in the regular course of business in the offices of American Asia Lines. Defendant also knew through an agent of American Asia Lines in Baltimore, the port from which the steel was shipped, that the weight of the steel actually placed on board in four instances, was considerably less than that ordered.

Defendant's amorphous defense could not withstand the weight of the evidence. Defendant at first attempted to prove that the bills were fraudulently negotiated by Manufacturers-Hanover Trust Company without defendant's knowledge or consent and in violation of an oral understanding relating to a loan agreement with that bank. This defense was abandoned.

Defendant then testified he considered a check for $586,768 paid to Monarch by Manufacturers-Hanover on May 18, 1964 pursuant to one letter of credit, the number of which appeared on the face of the check, a loan from the bank. An officer of the bank testified in rebuttal that no such loan was ever made or contemplated.

■ Defendant then testified he had no knowledge of the preparation, issuance or negotiation of the bills in question as he was preoccupied with serious problems. These problems related, inter alia, to the question of the eligibility of any company with which defendant, or any member of his family, was connected to participate in the federal A. I. D. program (Agency for International Development) for which he had applied and pursuant to which purchasers in Pakistan might purchase steel from his company. Defendant's knowledge of the preparation, issuance and negotiation of the bills of lading was established beyond a reasonable doubt.

■ Defendant finally claimed he was not contesting the fact of negotiation but the fact that there was no intent to defraud on his part since the proof, by way of a stipulation, showed that Monarch had ordered all the steel necessary for fulfilling the orders. This was true in part. The proof was also equivocal. The fact that the steel may have been ordered, however, is irrelevant. The evidence shows that upon the negotiation of each bill there was, in fact, either no steel shipped or a short shipment. The evidence further shows that defendant knew of the non-existent shipment or short shipment of his own knowledge. Moreover, despite guilty knowledge defendant directed the negotiation of the bills and received payment in full under each letter of credit.

■ Defendant correctly contends that proof of intent to defraud is necessary to establish guilt of the crime charged. In so holding in United States v. Blaustein, 64 Cr. 593 (S.D.N.Y. May 11, 1967 Mansfield, J.) this court ruled: "Proof of intent to defraud requires more than a showing that the defendant caused a bill of lading to be issued with knowledge that it contained false statements. A showing of some evil or wrongful purpose, or of an intention that others will act in reliance on the false statements, is required." Similarly, in United States v. Robbins, 62 Cr. 769 (S.D.N.Y. May 1, 1964, Bryan, J.), aff'd, 340 F.2d 684, 687 (2d Cir. 1965) this court charged the jury: "To act with intent to defraud means to act knowingly and with the specific evil intent to deceive for the purpose of bringing about some financial gain. Intent to defraud, like knowledge of falsity and other unlawful intent or purpose, may also be established by circumstantial evidence * * * from acts, conduct, surrounding circumstances and inferences to be naturally drawn therefrom.

"Thus it is not sufficient here for the government to establish beyond a reasonable doubt that bills of lading given or transferred contained false statements or forgeries. Knowledge by defendant that a bill contained false statements or forgeries and that with such knowledge it was given or transferred by the defendant with intent to defraud must also be established beyond a reasonable doubt before you can find a defendant guilty. This is an essential part of the government's case."

Here, Manufacturers-Hanover and the purchasers in Pakistan were intentionally deceived and defrauded when defendant knowingly caused the false bills of lading to be negotiated, which he knew the bank would rely upon in making payment, resulting in financial gain to defendant and his company at the expense of the purchasers. Intent

to defraud was established in this case beyond a reasonable doubt.

Defendant made a motion to dismiss at the end of the government's case and at the end of the whole case which the court considered to be a motion for judgment of acquittal. Rule 29, Fed.R. Cr.P. The motion at the end of the government's case was denied. The motion renewed at the end of the whole case is now denied.

In summary, the facts establish that defendant, with full knowledge of the falsity of the information contained on the twelve bills of lading which were prepared and issued by him or under his direction, caused these bills of lading to be negotiated and transferred for value with intent to defraud and that Manufacturers-Hanover and the purchasers in Pakistan, in fact, were defrauded, with the purchasers sustaining the loss.

The court concludes that the foregoing facts establish the essential elements of the crime, 49 U.S.C. § 121, and prove defendant's guilt of the crimes charged beyond a reasonable doubt.

See also D.C., 280 F.Supp. 859, and D.C., 280 F.Supp. 862.