UNITED STATES of America, Plaintiff-Appellee,

v.

William Ervin DEKLE, Dwight Ragans, and Ronald Mangle, Defendants-Appellants.

No. 84–3382.

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1985.

William J. Sheppard, Elizabeth L. White, Jacksonville, Fla., for Dekle.

Robert A. Harper, Jr., Tallahassee, Fla., for Ragans.

Aaron K. Bowden, Jacksonville, Fla., for Mangle.

Before GODBOLD, Chief Judge, TJOFLAT, Circuit Judge, and SIMPSON, Senior Circuit Judge.

GODBOLD, Chief Judge:

Appellants William Dekle and Dwight Ragans were indicted for conspiracy to possess marijuana with intent to distribute and with possession of marijuana with intent to distribute. Appellant Ronald Mangle was charged with aiding and abetting the Dekle-Ragans conspiracy and with perjury before a grand jury. The three were jointly tried. Dekle and Ragans were convicted for conspiracy but acquitted on the possession count. Mangle was convicted for perjury and acquitted on the aiding and abetting count. We affirm.

## FACTS

Viewed in the light most favorable to the government, the evidence shows that Ragans told John King and Benjamin Morris that he recently had obtained 40 pounds of

marijuana from Dekle. Ragans wanted to switch the marijuana with an equivalent amount to be taken from a batch of 140 pounds that Ragans was involved with but with which, as far as the evidence shows, Dekle had no connection.

King and Morris took the 40 pounds to the location where the 140 pounds had been left. They made the switch of 40 pounds for 40 pounds. Neither Ragans nor Dekle was present.

The "new" batch of 40 pounds was then stored at King's trailer, located on a farm. Third persons not charged in this case conspired to steal the 40 pounds. As they planned the theft they saw Dekle at the farm. The theft occurred. Ragans came to the scene, accused some of the third persons of the theft and said that there would be a meeting and that he was going to get Dekle. The meeting occurred, with Ragans, Dekle and some of the third persons present, and both Ragans and Dekle made a demand for the return of the stolen marijuana. Dekle added a threat that whoever took it was going to "do a trip in the hospital." Both Dekle and Ragans demanded that the third parties take a polygraph examination the next day. The following day, Koon, one of the third persons, telephoned Dekle and told him that he was not going to take the lie detector test. Dekle responded that Koon would have to "suffer the consequences thereafter." At the farm where the 40 pounds had been stored King and Morris appeared and took the polygraph examination, administered by Mangle. Ragans and Dekle were present at the farm.

Mangle first administered the polygraph examination to King inside King's trailer. Mangle told King that during the examination he would refer to the marijuana as "merchandise" and that the test would be composed of questions about what was taken and who might have taken it. After some preliminary questions, Mangle then asked King the present location of the "merchandise," whether King was responsible for moving approximately 40 pounds of "merchandise," and if King had any knowledge as to who did it.

Upon leaving the trailer King saw Ragans and Dekle outside. Morris went inside the trailer, was given the test by Mangle, and had essentially the same colloquy with him that King had. When Morris left the trailer he had a brief conversation with Ragans and Dekle in which they asked him how he had fared. Either Ragans or Dekle said that it looked "kind of bad for Monte Koon."

Later that day Mangle told Morris in the presence of Dekle and Ragans that Morris had done well on the test. Ragans then gave $50 to Morris and King.

Several months later Koon had another conversation with Dekle and Ragans about the stolen marijuana. Koon attempted to explain to Dekle and Ragans why he did not take the polygraph test. Dekle replied that Koon still should have taken the examination.

Shortly thereafter Ragans appeared at Koon's home and told Koon that he had been sent by Dekle to tell Koon that he had to either pay back the money or return the marijuana. Koon said that, while he would pay back half the amount of stolen marijuana, he still did not admit involvement in the theft. Ragans replied that he would report this back to Dekle.

Later two unknown men appeared at Koon's home and assaulted him. Koon reported the matter to the local authorities.

A few days later Koon spoke with Dekle about the assault and Dekle stated that it had become "... out of his control ..." as some people had come from Atlanta and he had shown them the location of Koon's home. Dekle also expressed anger that Koon had reported the incident to the police. Koon asked Dekle if Ragans had reported Koon's offer to pay back half the marijuana, and Dekle replied that this had not been communicated to him. The following evening Koon revisited Dekle and was told that Dekle had checked with the "people" and that it was acceptable for

Koon to pay back half of the marijuana as he had earlier proposed.

Later Mangle appeared and testified before the federal grand jury, denying giving polygraphs concerning marijuana and denying having any conversations to that effect with either Dekle or Ragans.

The grand jury returned an indictment charging Ragans and Dekle with conspiracy to possess marijuana with intent to distribute and with possession with intent to distribute. It charged Mangle with aiding and abetting the conspiracy and with the substantive offense of perjury committed before the grand jury. Each defendant moved for a severance, the motions were denied, and they were tried together. The foreman of the grand jury testified in the presence of the jury to the materiality of the representations made by Mangle before the grand jury. Ragans and Dekle were convicted on the conspiracy count, acquitted on the possession count. Mangle was acquitted on the aiding and abetting count and convicted on the perjury charge.

## DISCUSSION

### 1. *Variance.*

■ Dekle contends there was a fatal variance between the indictment and the evidence introduced at trial. The basis of his contention is that the government did not prove his knowledge of or involvement with the 140 pounds of marijuana but at most proved his involvement in a separate conspiracy to possess with intent to distribute the 40 pounds. Assuming arguendo that the 140 pound transaction involved a separate conspiracy, there is no fatal variance. The indictment charged Ragans and Dekle with conspiring to possess with intent to distribute marijuana from February 1983 to July 1983. The evidence at trial established, with respect to the 40 pounds, such a conspiracy between the two of them and within the dates indicated.

■ The existence of multiple conspiracies requires reversal only where the defendant's involvement in a particular conspiracy is not the conspiracy charged in the indictment. *See, e.g., U.S. v. Barnes*, 681 F.2d 717 (11th Cir.1982), *cert. denied*, 460 U.S. 1046, 103 S.Ct. 1447, 75 L.Ed.2d 802 (1983); *U.S. v. Gold*, 743 F.2d 800 (11th Cir.1984) (variance exists where the evidence at trial proves facts different from those alleged in the indictment, as opposed to facts which, although not specifically mentioned in the indictment, are entirely consistent with its allegations).

### 2. *Severance.*

■ Appellant Mangle was not charged as a co-conspirator with Ragans and Dekle but with aiding and abetting that conspiracy and with perjury before the grand jury. He contends that the crime of aiding and abetting a conspiracy is not recognized in this circuit, and, therefore, he should not have been tried jointly with Ragans and Dekle. *See* Fed.R.Crim.P. 8(b). Mangle was acquitted on the aiding and abetting count. He argues that the issue of whether aiding and abetting a conspiracy is a crime is not moot because only if the question can be answered affirmatively could he be tried jointly with the other appellants. We disagree and do not reach the question because the perjury count provided sufficient grounds for joining Mangle with Ragans and Dekle.

■ Joinder is permitted under Rule 8(b) even though not every defendant is charged with every offense in the indictment. The relevant inquiry is whether all the charges arose out of the same series of acts or transactions. *U.S. v. Corbin*, 734 F.2d 643 (11th Cir.1984). Mangle was charged with and convicted of perjury, which prohibits making false, material declarations before a federal grand jury. Those declarations concerned whether he administered polygraph tests to various persons to determine who had stolen the 40 pounds of marijuana that Ragans and Dekle had conspired to possess with intent to distribute. Proof of the perjury involved proving one phase of the Ragans-Dekle conspiracy. The perjury charge and the conspiracy charge arose out of the same transaction, and there was no misjoinder

under Rule 8(b). *See Corbin, supra* (where proof of perjury charges required proof of knowledge of substantive drug offenses, in that allegedly perjured testimony was uttered in response to questions concerning drug offenses, joint trial did not amount to misjoinder).

■ Mangle was also not entitled to a severance under Rule 14, because he has not demonstrated that he has suffered prejudice so compelling that it could not be cured by cautionary instructions. That there was no jury confusion or "spillover effect" from testimony relevant only to the government's case against Ragans and Dekle is evidenced by the fact that Mangle was acquitted on the aiding and abetting count. *See Corbin, supra; see also U.S. v. Walker,* 720 F.2d 1527 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).

### 3. *Testimony of grand jury foreman.*

At trial the foreman of the grand jury that indicted appellants testified to the materiality of the testimony given by Mangle to the grand jury. Appellants timely objected to permitting this testimony in the presence of the jury but were overruled. Their motions for mistrial were denied. Appellants were allowed relatively extensive cross-examination of the foreman.

■ The issue of materiality is a question to be decided by the court and not by the jury. Thus evidence bearing solely on materiality should be received outside the presence of the jury, and the court should embody its finding on materiality in an instruction to the jury. *See, e.g., U.S. v. Damato,* 554 F.2d 1371 (5th Cir.1977). The court in this case erred when it allowed the jury to hear the foreman's testimony pertaining to materiality. The error was harmless, however.

The court gave a jury instruction indicating that it had determined that Mangle's testimony was material. Thus the jury did not decide the issue. Moreover, there was sufficient evidence to support appellants' convictions independent of any impermissi-

ble inferences that the jury might have drawn from the testimony.

### 4. *Co-conspirators' statements.*

■ Ragans seems to assert that some of his statements, as well as the testimony of government witnesses, were erroneously admitted under Fed.R.Evid. 801(d)(2)(E) because the prosecution failed to prove by substantial independent evidence that he was a member of the conspiracy, as required by *U.S. v. James,* 590 F.2d 575 (5th Cir.1979) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Ragans does not indicate which statements were hearsay and were erroneously admitted. Nevertheless, we find more than enough evidence in the record of Ragans' involvement in the conspiracy to support the admission of hearsay statements, if any were admitted.

■ Much of the testimony relating to both Ragans and Dekle concerned highly incriminating statements made by these appellants. These statements constituted nonhearsay party admissions against penal interest and consequently were admissible evidence in their own right under Rule 804(b)(3). Moreover, a defendant's own admissions constitute independent evidence for the purpose of applying the *James* standard. *U.S. v. Lopez,* 758 F.2d 1517 (11th Cir.1985). And finally, there was substantial testimony as to Ragans' presence when acts in furtherance of the conspiracy were undertaken and when other conspirators (e.g., Dekle) were present. Presence, while insufficient alone, is material and probative in the totality of the circumstances. *See U.S. v. Alvarez,* 755 F.2d 830 (11th Cir.1985).

### 5. *Koon assault.*

■ Evidence of the assault on Koon was not offered under the theory that it was extrinsic to the conspiracy charged in count I but as proof of an overt act in furtherance of the conspiracy (the recovery of the stolen 40 pounds of marijuana). The court did not abuse its discretion in admitting it into evidence. *Cf. U.S. v. McRae,*

593 F.2d 700 (5th Cir.1979), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979).

### 6. *Testimony as to extrinsic acts committed by Ragans.*

 Government witness Koon testified that Ragans and another person had stolen 500 pounds of marijuana in an unrelated incident occurring a year earlier. This testimony was inadmissible, and the court gave a correcting instruction to the jury. The correcting instruction was sufficient to counter any prejudice.

### 7. *Records of electronic surveillance.*

Dekle contends that the court erred in failing to require the government to produce for his inspection records of a state-ordered surveillance, relying upon *Alderman v. U.S.,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). *Alderman* holds that production without *in camera* inspection is required to anyone with standing— i.e., who qualifies as an "aggrieved person." Dekle did not raise the issue of standing before the district court and does not present the question of his standing now. Instead he asserts for the first time at oral argument that the district court's *in camera* determination of the issue of standing was inadequate because the court did not read all the reports or listen to the tapes of the electronic surveillance. Assuming arguendo that the court made a less than comprehensive survey of the materials, we decline to address the issue of the adequacy of the court's assessment when that issue is raised for the first time at oral argument before this court.

### 8. *Jencks-Brady material.*

Appellants' contention that they were entitled to notes taken by government agents during interviews of witnesses is without merit. The district court was not clearly erroneous in finding that the reports were not statements signed or otherwise adopted by the witnesses and hence not discoverable under the Jencks Act. *See, e.g., U.S. v. Cole,* 634 F.2d 866 (5th

Cir.1981), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).

Some of those reports arguably contained material relevant to impeachment (government witnesses' prior criminal acts), and thus should have been disclosed pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Nevertheless failure to disclose was harmless error because the impeachment evidence was merely cumulative.

### 9. *Remaining claims.*

Appellants' remaining two claims, that the indictment should have been dismissed for vagueness and that the court approved the plea agreement of a government witness and conveyed that approval to the jury, are frivolous and require no discussion.

AFFIRMED.