**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bodhan GAFYCZK and Jorge Medina, Defendants-Appellants.**

**No. 86–5290.**

United States Court of Appeals, Eleventh Circuit.

June 16, 1988.

Charles J. Jaffee, Hollywood, Fla., for Gafyczk.

Paul Morris, Coral Gables, Fla., Michael J. Osman, Miami, Fla., for Medina.

Leon B. Kellner, U.S. Atty., Miami, Fla., Frederick R. Mann, Linda Collins-Hertz, David O. Leiwant, Asst. U.S. Attys., for the U.S.

Before KRAVITCH and CLARK, Circuit Judges, and ESCHBACH [*], Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

Appellants Gafyczk and Medina appeal from their convictions on multiple counts charging violations of 18 U.S.C. § 1001 (making a false statement in a matter within the jurisdiction of a U.S. government agency or department), 49 U.S.C.App. § 121 (falsely making a bill of lading), and 18 U.S.C. § 371 (conspiracy to commit an offense against the United States). Appellant Medina also appeals from his conviction of a violation of 18 U.S.C. § 1512(a) (tampering with a potential government witness).

I

Appellants' convictions resulted from their activities, during the period from about August 1, 1980 until about November 1, 1985, involving the importation of cigarettes into the United States and their subsequent export to Italy in a manner that avoided payment of the substantial duty levied by Italy on cigarettes imported into that country. During the relevant time period, Bodhan Gafyczk did business and acted as an agent for Ambrasco International Export Corporation, a firm engaged in the business of importing and exporting cigarettes. During the same period of time, Jorge Medina was the President of Joya Industries, Inc., an organization engaged in the business of importing and exporting cigarettes and other merchandise.

The superseding indictment of December 19, 1985 under which appellants were convicted alleged that Gafyczk and Medina participated in the following scheme. Untaxed American and non-American cigarettes were brought into the United States, either at New York City or Miami, Florida. The cigarettes imported to New York City were subsequently shipped to Miami. In Miami, the cigarettes were unloaded from their original shipping containers and repacked into containers with other materials (e.g., glass fibers, carbon black, or acrylic fiber) to conceal the presence of the cigarettes. The mislabeled containers were eventually shipped to various ports in Italy.

At the request of Medina and Gafyczk, various freight forwarding services (International Freight Forwarders, Galero Freight Forwarding Company, and Union Shipping) would prepare shippers' export declarations ("SED's") and ocean bills of lading ("B/L's") that described the contents of the subject containers as consisting solely of the materials used to conceal the cigarettes. In order to close the circle, Medina also directed that a second set of B/L's be created which showed that the

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, is sitting by designation.

cigarettes had been shipped either directly to Colombia or to Colombia through Bonaire. The SED's and B/L's were then submitted to the U.S. Customs Service in the course of the regular documentation process associated with the export of goods from the United States.

Following a jury trial, Bodhan Gafyczk was found guilty on the conspiracy charge in count 1, the 49 U.S.C.App. § 121 violations charged in counts 2 to 5 inclusive, and the 18 U.S.C. § 1001 violations charged in counts 6 to 9 inclusive. He was acquitted on the 18 U.S.C. § 1512(a)(3) charge brought by count 52. Jorge Medina was convicted on counts 1 to 9 inclusive (49 U.S.C.App. § 121 and 18 U.S.C. § 1001) and count 52 (18 U.S.C. § 1512). He was also found guilty on twenty additional § 121 counts (counts 10 to 22 inclusive, and 36 to 42 inclusive) and thirteen additional § 1001 counts (23 to 35 inclusive).

We will reverse the 49 U.S.C.App. § 121 convictions of appellant Gafyczk under counts 2 to 5 inclusive. The § 121 convictions of appellant Medina under counts 2 to 5 inclusive, 10 to 22 inclusive, and 36 to 42 inclusive will also be reversed. Appellants' convictions on all remaining counts will be affirmed.

## II

### A. *The 49 U.S.C.App. § 121 Convictions*

The appellants contend that insufficient evidence supports their convictions for violations of 49 U.S.C.App. § 121.[1] Counts 2 through 5 of the superseding indictment charge that Gafyczk and Medina did "knowingly and with intent to defraud make, utter and publish and aid in the making, issuing and procuring of the issuance of [certain] ocean bills of lading, . . . all in violation of Title 49 United States Code, Section 121." Counts 10 to 22 inclusive, and counts 36 to 42 inclusive employ essentially the same wording to charge Medina with additional violations of 49 U.S.

C.App. § 121. Our analysis of the appellants' contentions must initially focus on determining whether Gafyczk and Medina's acts concerning the false ocean bills of lading could, as a matter of law, constitute acts to defraud the U.S. Customs Service.

The jury instructions unequivocally set forth the requirements for showing a violation of 49 U.S.C.App. § 121. The instructions state that "[t]o act with intent to defraud means to act knowingly and requires *a showing of some evil or wrongful purpose, or of an intention that the United States Customs Service would act in reliance on the false statements.*" (emphasis supplied). Thus, the jury was effectively instructed that a violation of § 121 could be shown if the evidence proved beyond a reasonable doubt that the appellants acted with a wrongful purpose, *or* that they acted with the intention that the U.S. Customs Service would rely on the false information contained in the ocean bills of lading.

Appellants aver that the "intent to defraud" element of 49 U.S.C.App. § 121 requires sufficient proof that they intended to deprive the U.S. Customs Service of a right, interest, or property. They also observe that they were unable to find any § 121 cases where an allegation was raised that the U.S. Customs Service had been defrauded. The government does not respond directly to either of these assertions by appellants. Rather, it summarily asserts that Gafyczk and Medina were aware that the SED's and the B/L's were "created to mislead and defraud [the U.S.] Customs [Service]."

█ There can be no dispute that the falsification of the B/L's which the appellants were engaged in, or were involved with, did constitute an act intended to deceive the U.S. Customs Service. The guilty verdicts on several § 121 counts reflect the jury's conclusion that the appellants acted with an intent to achieve a wrongful purpose and/or to prompt reliance by the U.S.

---

1. The wording of the § 121 counts in the superseding indictment does not precisely track the wording of the first two clauses of § 121. That portion of the statute begins with "[a]ny person who, knowingly *or* with intent to de-

fraud." (emphasis supplied). Counts 2 to 5 inclusive, 10 to 22 inclusive, and 36 to 42 inclusive are worded in the conjunctive, not the disjunctive.

Customs Service. However, behavior reflecting an intent to deceive does not in itself satisfy the legal requirements for proving an intent to defraud. As the Supreme Court has noted generally, "[i]ntent to deceive and intent to defraud are not synonymous. Deceive is to cause to believe the false or mislead. Defraud is to deprive of some right, interest or property, by deceit." *United States v. Yermian,* 468 U.S. 63, 73 n. 12, 104 S.Ct. 2936, 2942 n. 12, 82 L.Ed.2d 53 (1984) (quoting *United States v. Godwin,* 566 F.2d 975, 976 (5th Cir.1978)). Because the government did not prove that the appellants deprived the Customs Service of a property interest, we must conclude as a matter of law that they did not violate 49 U.S.C.App. § 121 as charged in the superseding indictment.

Our research does not reveal any § 121 case that goes directly to the question of what type of conduct is necessary to prompt a finding of an "intent to defraud" the United States under that statute. However, substantial support in the law regarding other federal statutes with purposes similar to that of 49 U.S.C.App. § 121 indicate that something more than a mere intent to deceive the U.S. Customs Service and to cause its reliance on that deception is necessary to prove a violation of § 121.

In *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), a mail fraud case arising under 18 U.S.C. § 1341, the Supreme Court delineated a common construction of the legal term "to defraud." The Court observed that "the words 'to defraud' commonly refer 'to wronging one of his property rights by dishonest methods or schemes,' and 'usually signify the deprivation by trick, deceit, chicane or overreaching.'" *Id.* 107 S.Ct. at 2880–81 (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)). *Cf. United States v. Stanley Cooke,* 833 F.2d 109 (7th Cir.1987) (reversing convictions on charges of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343, where no scheme to obtain clients' money was involved).

■ The *McNally* Court distinguished between statutes which seek to protect the government and statutes which seek to protect individual property rights. *See* 107 S.Ct. at 2880–81 n. 8. Because it found that 18 U.S.C. § 1341 was designed to protect property rights, the Court concluded that the government's interests could only be implicated through its interests as a property holder. *Id.* We draw a similar conclusion from our analysis of 49 U.S.C.App. § 121. The clear purpose of § 121 is to protect property and the property rights of those who engage in interstate and foreign commerce. As a result, only the pecuniary and property interests of the government can be subjected to the fraud proscribed in § 121.

*United States v. Aadal,* 280 F.Supp. 862 (S.D.N.Y.1967), provides the only support for the view that the "intent to defraud" element of a § 121 violation can be established without proof of an intent to deprive the U.S. Customs Service of some pecuniary interest or property. It seems apparent that the district court in the present case drew part of its § 121 jury instructions from *Aadal,* 280 F.Supp. at 865. However, in the same paragraph from which the jury instructions were adopted, the *Aadal* court noted that in a § 121 case "[t]o act with intent to defraud means to act knowingly and with the specific evil intent to deceive *for the purpose of bringing about some financial gain." Id.* at 865 (quoting *United States v. Robbins,* 340 F.2d 684, 687 (2d Cir.1965)) (emphasis supplied).

In the relevant counts of the superseding indictment and the attendant jury instructions, the U.S. Customs Service was the only party identified as a target of the appellants' alleged intent to defraud. There is no evidence that the actions of Gafyczk and Medina with regard to the falsified bills of lading were intended to bring them financial gain by depriving the United States, or any department or agency thereof, of any pecuniary right, pecuniary interest, or property.

It is clear that such a deprivation could have occurred if the appellants' actions had

been even partially intended to evade the payment of export duties or other levies properly owed to the United States. However, the evidence indicates that Italy was the only party defrauded by the appellants' actions. That nation was not identified in the superseding indictment as a subject of the appellants' intent to defraud. Consequently, the fact that the evidence may well have established the appellants' intent to defraud Italy is of no import because that nation is not identified as the object of the effort to defraud in violation of 49 U.S.C.App. § 121 alleged in counts 2–5 inclusive, 10–22 inclusive, and 36–42 inclusive.

Before the appellants can be convicted under 49 U.S.C.App. § 121, the government must prove that the appellants intended to cause pecuniary or property loss to the United States. No such evidence was presented. Accordingly, we are compelled to reverse the appellants' convictions on counts 2 through 5, 10 through 22, and 36 through 42.

B. *The 18 U.S.C. § 1001 Convictions*

Gafyczk and Medina argue that their convictions on counts 6 to 9 inclusive (Gafyczk), and 23 to 35 inclusive (Medina) must be reversed because the government failed to adduce sufficient evidence to satisfy the elements of a 18 U.S.C. § 1001 offense. In words that loosely track the language of 18 U.S.C. § 1001,[2] these counts allege that on the dates specified appellants:

> in a matter within the jurisdiction of the United States Custom Service, did knowingly and willfully make, and cause to be made false, fraudulent and fictitious statements and representations as to a material fact, in that the defendants stated in the Shippers Export Declarations (SED's) set forth below that cargo bound

for Europe contained only cargo other than cigarettes, when in truth and fact, as the defendants well knew, the cargo would and did contain cigarettes as part of the contents, in violation of Title 18, United States Code, Sections 1001 and 2.

Five elements must be proven to sustain a conviction under 18 U.S.C. § 1001: "(1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." *United States v. Lawson,* 809 F.2d 1514, 1517 (11th Cir.1987).

Appellants first assert that the government failed to prove that the U.S. Customs Service had "jurisdiction" over SED's. Second, they claim that the misrepresentations concerning the SED's were not material to any concern of the Service. These two contentions raise questions of law not resolved by the district court which we must address *de novo. United States v. Lichenstein,* 610 F.2d 1272, 1279 (5th Cir. 1980) (noting that materiality under 18 U.S. C. § 1001 is a question of law).[3] Finally, the appellants allege that the evidence presented did not satisfy the specific-intent element of § 1001.

"Agency jurisdiction" as employed in § 1001 is a term of art that has been given a somewhat special meaning. "[Section 1001] is necessarily couched in very broad terms to encompass the variety of deceptive practices which ingenious individuals might perpetrate upon an increasingly complex government." *United States v. Massey,* 550 F.2d 300, 305 (5th Cir.1977). In *Bryson v. United States,* 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969), the Supreme Court stated that "the term 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." *See also United States v. Lambert,* 501 F.2d 943 (5th Cir.1974).

**2.** 18 U.S.C. § 1001 states:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain

any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** The Eleventh Circuit, in the en banc decision of *Bonner v. City of Pritchard,* 661 F.2d 1206 (11th Cir.1981) adopted as precedent decision of the former Fifth Circuit rendered prior to October 1, 1981.

In light of this precedent, the appellants' claim that the U.S. Customs Service lacks § 1001 "jurisdiction" over the SED's at issue must be rejected. The appellants contend that the Customs Service does not have jurisdiction because the SED's are documents generated by the U.S. Department of Commerce to be used for its compilation of statistics and enforcement of export laws. However, the testimony of Customs Agent Kirk, and Vessel Entry and Clearance Specialists Hunton and Haefer clearly demonstrates that SED's are routinely submitted to the Customs Service as part of a departing vessel's outbound foreign manifest. Hence, SED's are commonly utilized by the Service in the performance of its regularly conducted activities. Accordingly, when the appellants submitted their SED's to the Customs Service, this was sufficient to render those acts "matters within the jurisdiction of the U.S. Customs Service" as set forth in the § 1001 counts and as required by statute. We thus find that the element of jurisdiction required for a violation of 18 U.S.C. § 1001 is satisfied here.

Appellants next argue that the evidence fails to establish the potential effects on the U.S. Customs Service of the false statements made on the SED's. Citing *United States v. Sorkin*, 275 F.2d 330 (2nd Cir. 1960), appellants contend that, in the absence of detrimental reliance by the U.S. Customs Service on the falsified SED's, the element of materiality required for a § 1001 violation cannot be established.

The test for materiality under 18 U.S.C. § 1001 is articulated in *United States v. Lichenstein*. "A material false statement under [§ 1001] is one capable of affecting or influencing the exercise of a government function." 610 F.2d at 1278. *Lichenstein* teaches that in order for a false statement to be material under § 1001, it need not be shown to have actually influenced the government or caused it any pecuniary loss. *Id.* The false statement need only "have the capacity to impair or pervert the functioning of a governmental agency." *Id.* The purpose of this "judge-made limitation of materiality" is to insure that the reach of § 1001 is confined to reasonable bounds and not allowed to embrace trivial falsehoods. *Id. See also United States v. Beer*, 518 F.2d 168, 170–71 (5th Cir.1975).

The testimony of government witnesses Kirk, Hunton, and Haefer demonstrates that the U.S. Customs Service routinely utilizes the information contained in SED's to carry out its functions of monitoring the types, amounts, and destinations of goods exported from the United States. Thus, we conclude that the false statements on the SED's cited in counts 6 through 9 and 23 through 35 were "material" to the function of the U.S. Customs Service. Therefore, the materiality element necessary for a § 1001 conviction is also satisfied.

Finally, appellants aver that there was insufficient evidence to prove the specific-intent element of § 1001. Medina contends in his brief that the district court erred in "denying the motions for acquittal where the alleged violations of 18 U.S.C. § 1001 were not supported by proof beyond a reasonable doubt establishing materiality, jurisdiction, or specific intent." Gafyczk makes no reference to motions for acquittal in his brief. However, the record shows that it was Gafyczk and not Medina who filed a motion for acquittal on April 14, 1986. That motion was denied by the district court on May 5, 1986. However, we will not base our decision on this issue on waiver.

In light of this record, we have determined that this third challenge to appellants' § 1001 convictions can most appropriately be evaluated as a sufficiency of the evidence claim rather than as a review of a denial of a motion for acquittal. *United States v. Sanchez*, 722 F.2d 1501 (11th Cir. 1984), sets forth the standard for evaluating sufficiency of the evidence challenges in criminal cases:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is

free to choose among reasonable constructions of the evidence.

*Id.* at 1505 (quoting *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)). In *Sanchez,* we stated further that "[i]n making this determination, we must view the evidence in the light most favorable to the government, and accept reasonable inferences and credibility choices by the factfinder." 722 F.2d at 1505 (citations omitted). *See also Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Gonzalez,* 719 F.2d 1516, 1521–22 (11th Cir.1983).

Gafyczk avers that the government failed to prove that he acted with the requisite specific intent to deceive or induce belief in the false SED's, or to mislead as required for a § 1001 violation. *See Lichenstein,* 610 F.2d at 1276–77. He contends that the evidence fails to show that he knew the false information he furnished would be used to create false SED's. Thus, Gafyczk reasons there was no basis for the inference that he acted with an intent to deceive. Medina advances essentially the same argument as Gafyczk and adds that the only intent on his part established by the evidence was the intent to comport with an "industry practice" of not listing cigarettes on B/L's in order to deceive potential thieves.

On close examination, appellants' sufficiency of the evidence contentions reduce to a claim that the government failed to prove they acted with the specific intent to deceive because nothing in the record indicates that they actually had knowledge that those documents would be created and submitted to the U.S. Customs Service. Gafyczk and Medina cite no authority for the proposition that the showing of specific intent required under § 1001 includes proof of actual knowledge that a false document will be created and submitted to the government. We have held that § 1001 convictions challenged on sufficiency of the evidence grounds can be affirmed based on a finding that a jury reasonably could infer from circumstantial evidence that the defendants acted knowingly and willfully.

*See United States v. Benz,* 740 F.2d 903, 910 (11th Cir.1984). *See also United States v. Markey,* 693 F.2d 594 (6th Cir. 1982).

■ Gafyczk and Medina were principals in an ongoing scheme to import cigarettes into the United States and to export them clandestinely to Italy, enabling them to avoid paying the Italian import duties levied on cigarettes. Both men had been involved in the export business for a number of years at the time that they engaged in the conduct leading to their convictions. These facts must be considered in conjunction with the inferences that the jury could rationally have drawn from the circumstantial evidence, and the credibility choices it appears to have made in evaluating the appellants' testimony. We are convinced that, in the aggregate, the evidence presented to the jury was such that a reasonable trier of fact could find beyond a reasonable doubt that Gafyczk and Medina had knowledge that false SED's would be created and submitted to the U.S. Customs Service. Accordingly, we will affirm the § 1001 convictions of appellant Gafyczk on counts 6 to 9 inclusive, and the § 1001 convictions of appellant Medina on counts 6 to 9 inclusive and 23 to 35 inclusive.

### C. *The 18 U.S.C. § 371 Conspiracy Convictions*

Both appellants challenge their conspiracy convictions under 18 U.S.C. § 371. There are two dimensions to this aspect of their appeal. First, Gafyczk and Medina both claim that there was insufficient evidence to support their § 371 convictions. Second, the appellants claim that they suffered substantial prejudice because the government allegedly presented evidence supporting two separate conspiracies, instead of the one conspiracy alleged in the superseding indictment. Careful examination of their contentions discloses that, for the most part, appellants' arguments go to their professed innocence of the substantive crimes with which they were charged and convicted. Those matters have been

discussed previously and will not be re-addressed here.

■ Appellants' first claim concerning the sufficiency of the evidence must be measured by the *Sanchez* standard noted earlier. The essential elements of a conspiracy in violation of 18 U.S.C. § 371 consist of an agreement by two or more persons to commit an offense against the United States, and an overt act by one of those persons in furtherance of the agreement. *United States of America v. Isaacs*, 516 F.2d 409, 410 (5th Cir.1975). The elements of a conspiracy may be proved by circumstantial evidence. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–138, 99 L.Ed. 150 (1954); *United States v. Blasco*, 702 F.2d 1315, 1330 (11th Cir.), *cert. denied*, 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). A full evaluation of the evidence in the record leaves us convinced that a reasonable trier of fact, having viewed the evidence pertaining to the § 371 charges against appellants, could have concluded beyond a reasonable doubt that the evidence did establish that they agreed to commit an offense against the United States and did engage in an overt act in furtherance of that agreement.

In their second challenge to their § 371 conspiracy convictions, the appellants assert that Gafyczk's motion for acquittal on the conspiracy count should have been granted. They allege that a disparity exists between the conspiracy charged in count 1 of the superseding indictment and the evidence adduced at trial. Gafyczk and Medina maintain that they were charged and convicted of having taken part in a single conspiracy when the government in fact proved the existence of two conspiracies. Although Gafyczk does not cite the case in his brief, this contention, which was adopted by Medina pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure, is founded solely on the conspiracy rule of *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In *Kotteakos*, the Supreme Court reversed a conviction where it determined that the defendants, who had been charged with one conspiracy, had suffered substantial undue prejudice in being convicted on evidence that proved the existence of eight separate conspiracies.

In his brief, Gafyczk asserts that the evidence proved the existence of two separate conspiracies. The first he labels the "Bella-Barone conspiracy," for which he cites dates of 1979–1983. The second he dubs the "Medina-Koblitz conspiracy," citing dates of 1982–1985. Gafyczk claims that the two conspiracies were in competition with one another, and he does not acknowledge having been involved in either. Nonetheless, the evidence shows that Gafyczk had worked for Ambrasco Corporation since 1979 and was actively involved in the corporation's cigarette export activities with Medina for several years, both before and after the death of Gafyczk's former boss, Bella. Medina does not deny having been involved in either of the two alleged separate conspiracies.

■ We note that proof of multiple conspiracies does not in itself constitute reversible error. In *United States v. L'Hoste*, 609 F.2d 796 (5th Cir.1980), the Fifth Circuit stated that:

> "[p]roof of multiple conspiracies does not automatically constitute a fatal variance from a single [conspiracy] charged...." Instead, the inquiry must focus on whether the variance affects the substantial rights of the accused. If the Government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights.

*Id.* at 801 (citations omitted) (quoting *United States v. Wayman*, 510 F.2d 1020, 1025 (5th Cir.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975)). We have also previously held that "[t]he existence of multiple conspiracies requires reversal only where the defendant's involvement in a particular conspiracy is not the conspiracy charged in the indictment." *United States v. Dekle*, 768 F.2d 1257, 1261 (11th Cir. 1985).

■ In light of the rule of *L'Hoste*, it is not necessary for us to determine whether in fact the government proved more than

one conspiracy. Given the evidence as to Gafyczk's involvement in the "Bella-Barone conspiracy," a reasonable jury could have determined beyond a reasonable doubt that he was guilty of participation in at least the first conspiracy. Given the large amount of evidence tying Medina to both purported conspiracies, a reasonable jury could have determined that he was guilty of participation in both. Therefore, we can conclude that neither Gafyczk nor Medina suffered any prejudice to their substantial rights by virtue of a possible variance between the crime charged in count 1 and the evidence.

D. *Appellant Medina's 18 U.S.C. § 1512(a)(3) Conviction*

■ Appellant Medina asserts that his conviction under count 52 for intimidating or threatening a potential government informant in violation of 18 U.S.C. § 1512(a)(3) should be reversed. He asserts that the testimony by the subject of that illegal conduct, Maria Theresa Leon, was not credible. Quoting *Wilcox v. Ford,* 813 F.2d 1140 (11th Cir.1987), he characterizes her testimony as "so incredible, so contrary to the teachings of human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond reasonable doubt." *Id.* at 1146.

Medina's challenge goes only to Leon's credibility. That she may have lied at trial with regard to her prior arrest and criminal record does not *per se* establish that her other testimony should not be believed. Defense counsel was able to bring forth the truth on those matters from Leon during cross-examination. The jury was well aware of the testimonial conflicts and made its own credibility determination. Therefore, Medina's challenge to his § 1512(a)(3) conviction must be rejected.

E. *Appellant Medina's Claim That He Was Actively Misled by Officials of the U.S. Customs Service*

■ Medina testified at trial that at the beginning of 1981 an agent of the U.S. Customs Service, whose name Medina was unable to recall, had visited him at his Joya Industries office. He recalled that the visit had been prompted by the interception of four shipping containers of cigarettes (identified on the B/L's as carbon black) by Italian authorities. In the course of his conversation with this Customs Service official, Medina allegedly asked him if there was any problem with the manner in which the paperwork for the intercepted shipment of cigarettes had been handled. The official ostensibly replied that there was no problem so long as the cigarettes had left the country.

Medina offered this testimony to the jury and his counsel argued the point on closing argument. The jury apparently chose not to credit Medina's claim that he had been misled by the unidentified U.S. Customs Service official into continuing for some five years the conduct that allegedly resulted in his indictment, prosecution, and conviction. Medina's appeal constitutes no more than an attempt to persuade this court to re-adjudicate the question of fact raised by his "active misleading" defense. Questions of fact are for the jury to decide. Medina's appeal on this point can only be rejected.

### III

In light of the foregoing, appellants' convictions on the 49 U.S.C.App. § 121 violations charged in counts 2 to 5 inclusive, 10 to 22 inclusive and 36 to 42 inclusive of the superseding indictment are reversed. Appellant Gafyczk's convictions on counts 1, and 6 through 9 are affirmed. Appellant Medina's convictions on counts 1, 6 through 9, and count 52 are affirmed. The case is remanded to the district court for reconsideration of the sentences imposed. The trial judge need only vacate the sentences imposed on the convictions reversed and may, if he deems it appropriate, alter the sentences imposed on the convictions affirmed.

SO ORDERED.