[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11038
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20344-WPD-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS RAMON BATISTA,
ELIA O. VARGAS TERRERO,
a.k.a. Elia Vargas,

Defendant-Appellant.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 6, 2014)

Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Luis Ramon Batista and Elia O. Vargas Terrero (Vargas) appeal their convictions following a jury trial.  The jury convicted Batista of conspiring to steal goods valued at $1,000 or more from a truck traveling in interstate commerce, in violation of 18 U.S.C. §§ 371 and 659; stealing goods valued over $1,000 from a truck traveling in interstate commerce, also in violation of 18 U.S.C. § 659; and making a false statement to the Federal Bureau of Investigation (FBI), in violation of 18 U.S.C. § 1001(a)(2).  Vargas was convicted only of making a false statement to the FBI.  Batista and Vargas raise three issues on appeal, which we address in turn.  After review, we affirm their convictions.

## I.  LAY WITNESS TESTIMONY

Batista and Vargas both argue on appeal the district court improperly admitted expert testimony through lay witnesses, in violation of Federal Rule of Evidence 701(c).  Specifically, they argue the following three categories of testimony should not have been permitted:  (1) an FBI agent's testimony, using cell phone records, regarding Batista's and Vargas's location at particular times; (2) a police officer's testimony, using government weather data, regarding the weather at a particular time and location; and (3) phone company records custodians' statements that cell phone calls connect to cell towers and that the connection was made to the tower with the strongest available signal.

A non-expert witness may give opinion testimony if the testimony is: "(a) rationally related to the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  Subsection (c) was added to the Rule in 2000 to prevent expert testimony from being offered nominally as lay opinion testimony. *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005).  The determination of whether testimony is properly admitted as lay opinion is based upon the nature of the testimony, not whether the witness could be qualified as an expert. *United States v. LeCroy,* 441 F.3d 914, 926-27 (11th Cir. 2006).

In *United States v. Hamaker*, 455 F.3d 1316, 1331-32 (11th Cir. 2006), we held that a lay witness could testify as to the data entries made in company time sheets.  We noted that, because the witness "simply added and subtracted numbers from a long catalogue of [] records, and then compared those numbers in a straightforward fashion," his review of the records was "within the capacity of any reasonable lay person." *Id*.

The district court did not abuse its discretion in allowing the testimony to be admitted through lay witnesses. *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011), *cert. denied*, 133 S. Ct. 29 (2012) (reviewing the admissibility of lay opinion testimony for an abuse of discretion).  The FBI agent's testimony is

3

analogous to the admissible testimony in *Hamaker*.  He used Batista's and Vargas's cell phone records, along with the phone companies' records of where their cell phone towers were located, to plot on a map which towers connected with which cell phone at a particular point in time.  In order to produce the maps, the agent had to (1) read the cell phone records to determine which cell tower was used at a particular time, (2) look up the latitude and longitude of that cell tower in the companies' records, and (3) mark the intersection of the latitude and longitude on a map.  The district court, therefore, did not abuse its discretion in admitting the testimony.

For similar reasons, the officer's testimony was also admissible.  He testified regarding (1) the entries for precipitation on a government weather report, and (2) the distance, using maps, from the weather station to the road in specific cities.  The reading of the data and basic comparison of locations was also analogous to the testimony in *Hamaker*, and the court, therefore, did not abuse its discretion in admitting it.  *See id.*

The testimonies of the records custodians were also admissible under Rule 701(c).  The court here limited the witnesses to testifying that (1) cell phones connect to cell phone towers, and (2) cell phones generally connect to the tower with the closest, strongest signal.  It is common knowledge that cell phones connect wirelessly to a nearby cell phone tower.  *See Tampa Bay Shipbuilding &*

4

*Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1222-23 (11th Cir. 2003) (noting Rule 701(c) was not intended to prohibit lay witnesses from testifying to matters of common knowledge).  Further, even if not "common knowledge," the custodians, as lay witnesses, were entitled to testify to their "particularized knowledge" based on their experience.  *See id.* at 1223 (explaining testimony based on "particularized knowledge garnered from years of experience within the field," is not prohibited by Rule 701(c)).  The court, therefore, also did not abuse its discretion in allowing the records custodians to testify as they did.[1]

## II.  CUMULATIVE ERROR

Batista next asserts his convictions should be reversed based on cumulative error.  In doing so, Batista lists several places in the record where he asserts evidentiary errors occurred, but does not present any analysis as to why those rulings were erroneous.

The bulk of Batista's "cumulative error" analysis is a repetition of his argument the court admitted evidence in violation of Rule 701(c).  Additionally, without providing any analysis, Batista also points to a string cite of three places in

---

[1] Batista also purports to raise an argument challenging the denial of his Federal Rule of Criminal Procedure 29 motion for a judgment of acquittal.  However, he only argues that ruling was error insofar as, absent the improperly admitted expert testimony, there would not have been enough evidence for a conviction.  This is essentially an argument that the alleged evidentiary error was not harmless.  *See Henderson*, 409 F.3d at 1300.  As such, we do not address the sufficiency of any of Batista's convictions.  Further, as there was no evidentiary error, no harmless error analysis is necessary.

the record where he asserts the court admitted improper hearsay testimony.  "We routinely decline to address such cursory arguments, and this case presents no exception."  *United States v. Belfast*, 611 F.3d 783, 821 (11th Cir. 2010); *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (stating any issue not plainly and prominently raised on appeal will be deemed abandoned).  Even if not abandoned, Batista argues the hearsay violations warrant reversal only insofar as they are cumulative to the argued Rule 701(c) errors.  As the district court committed no error under Rule 701(c), Batista's claim of cumulative error is without merit.  *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (explaining where no individual errors are demonstrated, no cumulative error exists).

## III.  FALSE STATEMENT

Vargas contends the Government failed to present sufficient evidence to support her conviction for making a false statement to a government official regarding whether she traveled south of Orlando.

The elements of making a false statement under 18 U.S.C. § 1001 are: (1) the defendant made a false statement; (2) the statement was material; (3) the defendant acted with specific intent to mislead; and (4) the matter was within the purview of a federal government agency.  *United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002).  The statement, however, need not have had actual

influence, but must simply have had the capacity to impair the functioning of a government agency. *United States v. Boffil-Rivera*, 607 F.3d 736, 741-42 (11th Cir. 2010). The intent element of the statute can be met where the jury can reasonably infer from circumstantial evidence that the defendant acted knowingly and willfully. *United States v. Gafyczk*, 847 F.2d 685, 692 (11th Cir. 1988).

Granting every inference in favor of the verdict, there was sufficient evidence that Vargas made a false statement. *See United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009) (reviewing *de novo* whether sufficient evidence supports a conviction, and drawing all reasonable factual inferences from the evidence in favor of the verdict). The government official testified Vargas told him that she did not travel to Miami before reporting the cargo stolen. Vargas's cell phone records, however, revealed her cell phone was in Miami before the truck and cargo were reported stolen. The jury could have reasonably inferred, absent any evidence to the contrary, that Vargas was with her cell phone. The official's testimony that he did not write in his notes that Vargas denied going to Miami before reporting the stolen cargo may go to the credibility afforded to his testimony. However, on sufficiency review, we draw reasonable inferences in favor of the verdict, and sufficient evidence supports the conviction. *See id.*

Vargas also argues that, because the official was aware the stolen merchandise was stored in Miami, Vargas's false statement was not a material one.

7

However, his knowledge that the merchandise was in Miami did not render his inquiry into whether Vargas, herself, went to Miami, immaterial to the investigation. Arguably, that knowledge would make it more critical for the official to know Vargas's whereabouts to determine whether Vargas may have been involved in bringing the property to Miami herself. To be "material," the false statement must have been capable of influencing the decision making of the agency to which it was addressed. *See Boffil-Rivera*, 607 F.3d at 741. The whereabouts of a witness or suspect to a theft (one who had access to the truck containing the stolen goods) around the time the goods were stolen easily meets that test.

As the official was working for the federal government investigating an interstate theft, the statement fell under the purview of a federal agency. *McCarrick*, 294 F.3d at 1290. Further, as Vargas responded to a direct question of whether she went to Miami before reporting the goods stolen, and her answer was similarly direct, the jury could have inferred intent on her part to deceive. *See Gafyczk*, 847 F.2d at 692. Accordingly, there was sufficient evidence to support all of the elements of a § 1001 offense.

**AFFIRMED.**